JUDGE NATHAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

**12 CIV 3463**

INTERNATIONAL CHARTERING SERVICES, INC.
and PERACO CHARTERING (USA) LLC,

          Plaintiffs,

--and--

EAGLE BULK SHIPPING INC., ANEMI
MARITIME SERVICES, S.A.; BITTERN SHIPPING
LLC; KINGFISHER SHIPPING LLC; AVOCET
SHIPPING LLC; CRANE SHIPPING LLC; WREN
SHIPPING LLC; JAY SHIPPING LLC; CANARY
SHIPPING LLC; MARTIN SHIPPING LLC;
THRASHER SHIPPING LLC; ORIOLE SHIPPING
LLC and OWL SHIPPING LLC,

          Defendants.
------------------------------------------------------------X

Case No. _____



## NOTICE OF REMOVAL PURSUANT TO 9 U.S.C. § 205

All defendants (the "Defendants") file this Notice of Removal pursuant to the Court's jurisdiction over international arbitration under 9 U.S.C. Sections 203 and 205, and 28 U.S.C. Sections 1331, 1441, and 1446(b), or in the alternative pursuant to the admiralty or maritime jurisdiction of the Court pursuant to 28 U.S.C. Sections 1333, 1441, and 1446. Defendants show the Court the following:

### I. PROCEDURAL HISTORY

1.     Plaintiffs International Chartering Services, Inc. and Peraco Chartering (USA) LLC ("Plaintiffs") filed their complaint (the "Complaint") on April 13, 2012, in the Supreme Court of the State of New York, County of New York. Their action is docketed as *Int'l Chartering Servs. v. Eagle Bulk Shipping, Inc. et al.*, Index No. 651207/2012. A copy of the

Complaint (without exhibits) is annexed hereto as Exhibit A. Defendants intend to move in short order to stay the action.

2. Defendants were purported to be served on April 13, 2012 with the Summons and Complaint. Those documents are annexed in their entirety within Exhibit C.

3. Defendants reserve all defenses available to them, including as to service of process.

4. Defendants hereby give notice pursuant to Federal Rule of Civil Procedure 44.1 that the issue of whether this action should be stayed in favor of arbitration may be determined in part by the application of the laws of England.

## II. GROUNDS FOR REMOVAL

### A. Federal Arbitration Act, Chapter 2

5. This Court has original jurisdiction over this action Chapter 2 of the Federal Arbitration Act ("FAA") and 28 U.S.C. § 1331.

6. Section 202 of the FAA states:

> An arbitration agreement or arbitral award arising out of a legal relationship... which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention [the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention")]. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section, a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

9 U.S.C. § 202.

7. Section 203 provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The District Courts of the United States... shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203.

8. Section 205 governs the removal of cases from state courts and provides that:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant... may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district... The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal.

9 U.S.C. § 205.

9. The Convention applies where four requirements are met: "(1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope." *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999); *see also Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F. Supp. 293, 298 (S.D.N.Y. 1997).

10. Defendants may remove this action to this Court pursuant to the provisions of 9 U.S.C. § 205 because the subject matter of the action pending in State court relates to an arbitration agreement or award falling under the Convention.

11. First, the charter parties at issue herein each contain a written arbitration agreement that states:

> That should any dispute arise between Owners and Charterers, the matter in dispute shall be referred to three persons at London... their decision... shall be final, and for the purpose of enforcing any

3

> award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial shipping men. This Charter Party shall be governed by the English Law.

(Exhibit C, § 17; 2007 Master Charterparties (excerpts)).

12. Second, the United Kingdom of Great Britain and Northern Ireland, where the arbitration is to take place, is a signatory to the Convention.

13. Third, the subject matter is commercial because the charter parties at issue here are commercial in nature. *See* 9 U.S.C. § 2; *Todd's Point Marine v. Rojos*, 1996 U.S. Dist. LEXIS 11811, at *3-4 (S.D.N.Y. Aug. 19, 1996) (concluding dispute fell under the Convention after acknowledging that "the Charter Party is a commercial agreement"). Additionally, the charter parties involve the international carriage of goods, an inherently commercial activity.

14. Fourth, Korea Line Corporation, a party to the charter parties containing the arbitration agreements at issue (Ex. B) is not a citizen of the United States. It is a citizen of the Republic of Korea, with its principal place of business in the Republic of Korea.

15. Further, the agreement is not entirely domestic in scope. Both the agreement and brokers' claimed participation with respect thereto bear a reasonable relation to a foreign state; Plaintiffs allege they continued to work with KLC and even went to Korea/performed services with respect to Korea Lines as well as services in connection with international shipping. *See Shanghai Foodstuffs Imp. & Exp. Corp. v. Int'l Chem., Inc.*, No. 99 CV 3320, 2004 U.S. Dist. LEXIS 1423, at *4 (S.D.N.Y. Feb. 4, 2004) (where the petitioner was organized under the laws of the People's Republic of China and the relationship between the parties involved the international shipment of goods, the court determined the arbitration award fell under the Convention).

**Factual Background**

16. The Complaint alleges that the Plaintiffs orally negotiated their brokerage commissions with Eagle Bulk Shipping Inc. ("Eagle Bulk") and Anemi Maritime Services, S.A. ("Anemi"); subsequently, and consistent with industry custom and practice, the terms of the brokerage commissions were incorporated into and appear in the charter parties entered into between the ship owning corporations and Korea Line Corporation. (Compl. ¶¶ 24-33).

17. In 2011, Defendants modified the terms of the charter parties, incorporating a "suspension period;" thereafter, the Defendants allegedly refused to pay commissions on hire earned and paid during the suspension period. (Compl. ¶¶ 7-8).

18. Plaintiffs also allege breach of a maritime contract, willful frustration of contract, unjust enrichment, and seek an accounting.

19. As a substantive matter to be put before the arbitrators and not this Court, Defendants contend that the purported hire payments at issue in the Complaint were not made pursuant to the charter parties and that consequently no money is due to Plaintiffs.

**Plaintiffs' Claims Are Subject to Arbitration**

20. Although the Plaintiffs are not signatories to the charter parties at issue, Plaintiffs are bound by the charter parties' arbitration provision and performance at issue is unequivocally under the charter parties. *See Borsack*, 974 F. Supp. at 298.

21. Plaintiffs are bound by the arbitration provision in the charter parties because they are direct beneficiaries of the charter parties, seeking to recover commissions pursuant thereto. *See Alfa Laval U.S. Treasury Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2012 U.S. Dist. LEXIS 9226, at *26-27 (S.D.N.Y. Jan. 26, 2012); *Best Concrete Mix Corp. v. Lloyd's of London Underwriters*, 413 F. Supp. 2d 182, 187 (E.D.N.Y. 2006) (non-signatory is estopped from

avoiding arbitration where it receives "a direct benefit from the contract containing the arbitration clause"); *Borsack*, 974 F. Supp. at 298.

22. Similarly, under English law, which governs the charter parties, the Plaintiffs would also be bound to arbitrate this dispute. *See Nisshin Shipping Co., Ltd. v. Cleaves & Co. Ltd.*, [2004] 1 Lloyd's Rep. 38 (Queen's Bench Division, Commercial Court).

23. To the extent the Plaintiffs allege that performance is due not under the charter parties but instead under some prior oral negotiation or memorandum, the determination of whether that is arbitrable is a question for the arbitrators under the arbitration agreement and both U.S. and English law.

24. Under U.S. law, any claims Plaintiffs base on such a prior agreement are not cognizable. *Borsack*, 974 F. Supp. at 298 (where an oral agreement was documented in a contractual addendum, plaintiffs could not sustain a claim for breach of oral contract); *see Kempf v. Mitsui Plastics, Inc.*, No. 96 Civ. 1106, 1996 U.S. Dist. LEXIS 17240, at *20 (S.D.N.Y. Nov. 20, 1996) (observing a "contract which appears complete on its face is an integrated agreement as a matter of law"). Plaintiffs' claims are reduced to those arising from the charter party, and as such, Plaintiffs are bound to arbitrate the dispute. *Borsack*, 974 F. Supp. at 299 (observing plaintiffs could not seek to enforce one part of the contract while ignoring another part – the arbitration clause).

25. Under English law, the Plaintiffs are similarly bound to bring these issues to the arbitrators in the first instance. *See* English Arbitration Act 1996 (the "Arbitration Act") at § 30. Any issue with respect to the arbitrability of these disputes, once it is determined there is an arbitration clause, will be for the arbitrators in London, subject to the provisions of the Arbitration Act. Under the Arbitration Act, the arbitrators have the power to determine the

arbitrability of any claims put before them. Section 30(1) of the Arbitration Act covers the issue of whether brokers were party to an arbitration agreement and whether the matters referred to arbitration are within the scope of the arbitration agreement.

26. The Court therefore has jurisdiction of this case pursuant to Chapter 2 of the FAA and removal is proper under 9 U.S.C. § 205.

**B. Maritime Jurisdiction**

27. Alternatively, this Court has jurisdiction over the case as the claims in the Complaint alleged therein arise on their face under admiralty or maritime jurisdiction. Indeed, plaintiffs' second cause of action is for "Breach of a Maritime Contract" and they allege that their arrangement with defendants were maritime contracts. (Compl. at 19 & ¶ 86).

28. The Plaintiffs' claims arise out of maritime contracts – the charter parties – which are ones that "relate[] to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime employment." *Sea Transp. Contractors, Ltd. v. Indus. Chemiques du Senegal*, 411 F. Supp. 2d 386 (S.D.N.Y. 2006). Here, Plaintiffs allege that they performed manifold maritime services—such as assisting with technical and operational issues following vessel deliveries, expediting the discharge of cargo, acting as liaison between Korea Line Corporation and Eagle Bulk concerning loading or discharge of cargo, coordinating the delivery of bunkers, advising Korea Line Corporation regarding proper stowage, and expediting carriage (Compl. ¶¶ 81-83)—and that they are entitled to commission payments as a direct beneficiary of the charter parties, which are the quintessential maritime contracts. As such, this Court has admiralty jurisdiction pursuant to 28 U.S.C. § 1331(1).

29. Even if the Plaintiffs' allegation that their claims arise out of some agreement antecedent to the charter parties is legally cognizable (and it is not), the Court would still have

7

admiralty jurisdiction as any such purported separate agreement would also constitute a maritime contract. *See e.g., Penguin Maritime Ltd. v. Lee & Muirhead Ltd.*, 588 F. Supp. 2d 522, 525 (S.D.N.Y. 2008) (finding agreement maritime in nature where agent was responsible for "perform[ing] tasks that are directly related to maritime commerce: for example, arranging for berthing of the vessel and loading cargo"); *Pac. Growth S.A. v. Aon Corp.*, 1999 U.S. Dist. LEXIS 15381, at *15 (S.D.N.Y. Sept. 30, 1999) (insurance broker contract was maritime agreement).

30. Plaintiffs allege that they "provided services over and above those typically performed by brokers," including coordinating delivery of bunkers to Eagle and the vessel, and taking "various measures to expedite the carriage, loading and discharging of the cargo." (Compl. ¶ 83). As such, the Complaint pleads maritime jurisdiction on its face.

31. Because the Plaintiffs have pleaded maritime agreements and by reason of the foregoing, the Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1333.

## III. PROCEDURAL MATTERS

32. Attached as Exhibit B are copies of all records and proceedings in this action, as required by Rule 81.1(b) of the Local Civil Rules for the Southern District of New York.

33. This action has been removed prior to trial, as required by 9 U.S.C. § 205. *See Dale Metals Corp. v. KIWA Chem. Indus. Co.*, 442 F. Supp. 78, 81 (S.D.N.Y. 1977) (cases removed pursuant to 9 U.S.C.S. § 205 do not need to comply with time provisions of 28 U.S.C. § 1446(b)).

34. Alternatively, with respect to removal under 28 U.S.C. § 1333, Defendants have served and filed this Notice of Removal within 30 days of service of the Summons and Complaint on Defendants.

35. Written notification of this Notice of Removal is being served on Plaintiff's counsel on this date. Proof of service of the notification of the Notice of Removal is being filed concurrently herewith.

Dated: May 1, 2012

SEWARD & KISSEL LLP

By: _____
Bruce G. Paulsen
Jeffrey M. Dine
Celinda J. Metro
One Battery Park Plaza
New York, New York 10004
(212) 574-1500

*Attorneys for Defendants*

SK 25083 0003 1284324 v6