UNITED STATES DISTRIC COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
INTERNATIONAL CHARTERING SERVICES, INC.   :

         AND                                  :

PERACO  CHARTERING (USA) LLC,           :

                        Plaintiffs,            :

     -against-                           :

EAGLE BULK SHIPPING INC., ANEMI MARITIME
SERVICES, S. A.; Bittern Shipping LLC; Kingfisher
Shipping LLC;  Avocet Shipping LLC;  Crane      :
Shipping LLC; Wren Shipping LLC; Jay Shipping LLC.;
Canary Shipping LLC; Martin Shipping LLC; Thrasher   :
Shipping LLC;  Woodstar Shipping LLC; Nighthawk
Shipping LLC; Oriole Shipping LLC and Owl Shipping   :
LLC.

                      Defendants.       :
------------------------------------------------------------------x

Case No. 12 Civ. 3463 (AJN)

AFFIRMATION OF
MARY ANN C. MARLOWE

MARY ANN C. MARLOWE, affirms and declares:

1. I am a member of Keane & Marlowe, LLP, counsel for Plaintiffs in the above-

captioned action, and am fully familiar with the facts set forth below.  I submit this Affirmation

in connection with the February 25, 2014 Summary Order of the Second Circuit Court of

Appeals ("Summary Order") (Dkt. No. 47) and the March 17, 2014 Order of this Court (Dkt. No.

53) directing the parties to brief the following two issues on remand, namely:

     (1)     Whether, under federal maritime choice of law rules, federal or English

law applies to the question of whether Plaintiffs are bound to arbitrate under the

charterparties' arbitration provisions; and

(2)    Whether Plaintiffs have claims that are independent of the charterparties.[1]

2.    More specifically, this Affirmation is being submitted for the purpose of introducing into evidence the attached post oral argument correspondence submitted by the parties to the Second Circuit (2d Cir. Dkt. Nos. 77-80)[2] which relates to Question (2) above, i.e., whether the May 4, 2007 email confirmation of brokerage commission rates constitutes a brokerage contract, independent of the charterparties and out of which Plaintiffs' claims herein arise.

3.    By way of brief background, at pages 14-15 and n.3 of the Reply Brief for Defendant-Appellants (2d Cir. Dkt. No. 65), Defendants argued that the May 4, 2007 email is not the commission agreement between Brokers and Owners out of which Plaintiffs' claims arise because it did not change the commission rates established by the charterparties. In doing so, Defendants also again suggested on appeal that the Affidavit by Defendant Anemi Maritime Services, S.A. ("Anemi") (Sotiri Dushas) was false in this regard. As stated in Defendants' Reply Brief at 14-15 and n.3:

> "The Brokers' commission rate did not change;[3] all that the May 4 Email does is make it clear that the Brokers would receive commission on any profit sharing under the amended Charter Parties. It refers to execution of an amendment to the Charter Parties finalizing the items set out in the May 4 Email, and those amendments were subsequently executed. A-180-88. It is simply not an agreement between Brokers and Owners at all.
>
> [3] Although Mr. Dushas states that Peraco and Overseas commissions under the February 1, 2007 Charter Party were 1.125% and later increased (Dushas Aff. ¶ 25 (A-357), the February 1, 2007 Charter Party itself does not reflect anything other than a 1.25% rate for them. A-137. Given that the document is not consistent with Mr. Dushas' Affidavit and that the Brokers have alleged and sworn that Peraco's

---

[1] This Court's March 17, 2014 Order additionally provides for the following option:
   "With respect to Question (2), consistent with Defendants' proposal, the parties *may* address related questions, including which law should apply to the determination of "independence," and whether that determination is to be made by the Court in the first instance or instead by an arbitrator." (emphasis added)

[2] Also attached hereto as Exhibits 6-8.

commission was to be 1.25% all along (Compl. ¶ 32 (A-32); Stavnes Aff. ¶ 27 (A-405)), this can only be another error in Mr. Dushas' sworn testimony."[3]

4.      During the course of preparing for oral argument before the Second Circuit, Plaintiff ICS forwarded to the undersigned the original recap for the February 1, 2007 charterparty sent from Peraco (Harald Stavnes) to ICS (Jim Hammond). Unfortunately, this was not previously in the undersigned's possession and was not, therefore, either in evidence before this Court or in the record on appeal. Page 6 of that recap (Para. F) reflects that the original commission rates for Peraco and Overseas was, in fact, only 1.125% while that for ICS was 1.25%. (*See* copy of February 1, 2007 charter party recap attached to the undersigned's December 12, 2013 FRAP 28(j) letter to the Second Circuit attached hereto as **Exhibit 2**.) Thus, Mr. Dushas' statement in ¶ 24-26 of his Affidavit that the rates were subsequently changed and confirmed by the May 4, 2007 email confirmation to reflect an increase to 1.25% for Peraco and Overseas was correct. (For the convenience of the Court, a copy of the relevant portion of the May 4, 2007 email confirming this change (also attached in its entirety to the Complaint as Exhibit 1) is attached hereto as **Exhibit 3**.)

5.      On December 10, 2013, the day before oral argument before the Second Circuit, the undersigned forwarded this information, along with the recap for the February 1, 2007 charterparty to Defendants' counsel so that the above-noted misstatement contained on pages 14-15 and n. 3 of their appellate reply brief would not be repeated during the course of oral argument. The undersigned further explained to opposing counsel that the reason why the February 1, 2007 charterparty introduced into evidence (Dkt. No. 4, Exh. A) reflects the 1.25%

---

[3] This Court may recall that Defendants went so far as to threaten to file a Rule 11 motion if Plaintiffs did not withdraw Defendant Anemi's Affidavit submitted in support of Plaintiffs' Opposition to Defendants' Motion to Stay and Compel Arbitration. Defendants' threat to file a Rule 11 motion was made following the filing of their reply papers which, among other reasons, precipitated a request by the Plaintiffs for a surreply. *See* Plaintiffs' initial disclosure to this Court of Defendants' threatened Rule 11 motion in footnote 1 of the undersigned's June 15, 2012 letter to this Court. (Copy attached hereto as **Exhibit 1.**)

3

commission rate for Overseas and Peraco is that the copies in evidence are the signed versions, which were not signed until June 11, 2007. By that time, the change in rates confirmed by the May 4, 2007 email was reflected in provision 27 of the final version. (*See* copy of December 10, 2013 email from the undersigned to Bruce Paulsen and Jeffrey Dine attached hereto as **Exhibit 4**.)

6.      Notwithstanding the information and supporting documentation sent to opposing counsel on December 10th, on December 11, 2013, during the rebuttal phase of oral argument, Mr. Paulsen again made misleading statements to the Second Circuit to the effect that the May 4, 2007 email confirmation represented no change to the commission rates previously agreed upon. (*See* Tr. 23:10 – 24:2 of the December 11, 2013 oral argument before the Second Circuit attached hereto as **Exhibit 5**.)

7.      Having had no opportunity to reply to the implied misrepresentation made by opposing counsel during his rebuttal remarks, the undersigned, on December 12, 2013, forwarded to the Second Circuit a FRAP 28(j) letter explaining the inaccurate impression given to the Second Circuit by opposing counsel during oral argument. (2d Cir. Dkt No. 77). Attached to this letter was a copy of the undersigned's December 10, 2013 email and attached recap to opposing counsel. (*See* copy of the undersigned's December 12, 2013 letter to the Second Circuit attached hereto as **Exhibit 6**.)

8.      In their response to the Second Circuit, (2d Cir. Dkt. No. 79, 81)[4] on December 12, 2013, opposing counsel avoided responding to that part of Judge Wesley's inquiry as to whether the May4, 2007 confirmation reflected any "change." Mr. Paulsen only referred to that portion of his statement to Judge Wesley wherein he indicated that the May 4, 2007 email rates were the same as those which appeared in the final charter parties in evidence. Rather than

---

[4] Defendants' letter was initially filed defectively.

4

acknowledging the clear change in rates from the February 1, 2007, later reflected in the May 4, 2007 email, Defendants focused instead on their intent to question the credibility of the Dushas Affidavit and the fact that the recap had not been previously introduced into evidence. (*See* copy of Mr. Paulsen's December 12, 2013 letter to the Second Circuit attached hereto as **Exhibit 7**.)

9.      On December 13, 2013 (2d Cir. Dkt. No. 82), the undersigned replied emphasizing that opposing counsel specifically argued during rebuttal, as Defendants had impliedly argued in their appellate reply brief at 14-15 and n.3, that the May 4, 2007 confirmation reflected no change notwithstanding their receipt of information and documentation to the contrary the day prior to oral argument. (*See* copy of the undersigned's December 13, 2013 letter to the Second Circuit attached hereto as **Exhibit 8**.)

10.     The above and attached exhibits are respectfully submitted in further support of Plaintiffs' argument that the May 4, 2007 email confirmation from Plaintiff ICS (James Hammond), on behalf of then Owner Anemi Maritime Services, to Plaintiff Peraco is, in fact, the brokerage contract which established the commission rates for ICS, Peraco and Overseas out of which Plaintiffs' claims herein arise, which rates were then simply reflected in the final charterparties executed on June 11, 2007.

11.     I affirm and declare under penalty of perjury that the above is true and correct.


Dated:  May 9, 2014
        East Brunswick, New Jersey

Mary Ann C. Marlowe (MM0723)

5