UNITED STATES DISTRIC COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
INTERNATIONAL CHARTERING SERVICES, INC.   :

                         Case No. 12 Civ. 3463 (AJN)

          AND   :

PERACO CHARTERING (USA) LLC,   :

            Plaintiffs,   :

        -against-   :

   :

EAGLE BULK SHIPPING INC., ANEMI MARITIME
SERVICES, S. A.; Bittern Shipping LLC; Kingfisher
Shipping LLC; Avocet Shipping LLC; Crane   :
Shipping LLC; Wren Shipping LLC; Jay Shipping LLC.;
Canary Shipping LLC; Martin Shipping LLC; Thrasher   :
Shipping LLC; Woodstar Shipping LLC; Nighthawk
Shipping LLC; Oriole Shipping LLC and Owl Shipping   :
LLC.
   :

           Defendants.   :
------------------------------------------------------------------------x

**PLAINTIFFS' REPLY MEMORANDUM OF LAW ON REMAND PURSUANT TO**
**DISTRICT COURT ORDER DATED MARCH 17, 2014**

KEANE & MARLOWE

197 Route 18 South, Suite 3000
East Brunswick, N.J.  08816
(732) 951-8300
Fax (732) 951-2005

245 Park Avenue – 39th Floor
New York, New York 10167
(212) 572-6210

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

REPLY TO DEFENDANTS' STATEMENT OF FACTS ........................................................ 1

ARGUMENT ............................................................................................................................. 2

POINT I.   A FEDERAL MARITIME CHOICE OF LAW ANALYSIS MANDATES THE APPLICATION OF FEDERAL LAW HEREIN. ....................................................... 2

    A.   The Contract's Choice of Law Provision is Immaterial Herein. ....................................... 3

        1.   England has no relationship to these parties herein or to the dispute at issue. ............ 4

        2.   The application of English law conflicts with important U.S. public policy............... 4

        3.   Compelling plaintiff nonsignatories to arbitrate in London under English law would be most definitely "unfair, unjust or unreasonable." ....................................... 5

    B.   A Maritime Choice of Law Analysis Points to the Application of U.S. Law..................... 6

        1.   The place where the contract was negotiated, issued and signed. ............................... 6

        2.   The place of performance and subject matter of the contract..................................... 7

        3.   Domicile, residence, nationality, place of incorporation, and place of business. ......... 7

    C.   A Third Party Beneficiary is Not Automatically Bound by the Contract's Choice of Law..................................................................................................................... 8

POINT II.   PLAINTIFFS' CLAIMS ARE INDEPENDENT OF THE CHARTER PARTIES. ... 8

    A.   The Scope of Clause 17 is Narrow Under Both United States and English Law. ............ 9

    B.   The Court Must Determine the Arbitrability of Plaintiffs Claims. ................................... 9

    C.   *Robinson Brog* Is Distinguishable, And, Thus, Not Dispositive of the Independence Issue. ................................................................................................................................. 10

    D.   Plaintiffs' Claims are Manifestly Meritorious. ............................................................. 11

CONCLUSION........................................................................................................................ 12

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Advani Enters. v. Underwriters at Lloyds*,
  140 F.3d 157 (2d Cir. 1998) ........................................................................................... 3

*Aguas Lenders Recovery Group LLC v. Suez, S.A.*,
  585 F.3d 696 (2d Cir. N.Y. 2009) .................................................................................. 8

*American Bureau of Shipping*,
  170 F.3d 349 (2d Cir. 1999) ........................................................................................... 8

*Assuranceforeningen Skuld Den Danske Afdeling v. Allfirst Bank*,
  96 Fed. App'x 753 (2d Cir. 2004) .................................................................................. 3

*Blue Whale Corp. v. Grand China Shipping Dev. Co., Ltd.*,
  722 F.3d 488 (2d Cir. 2013) ................................................................................... 2, 3, 8

*Genesco, Inc. v. T. Kakiuchi & Co.*,
  815 F.2d 840 (2d Cir. 1987) ..................................................................................... 11, 12

*Great lakes Reinsurance (UK) PLC v. Durham Auctions Inc.*,
  585 F.3d 236 (5th Cir. 2009) .......................................................................................... 3

*Kulig v. Midland Funding, LLC*,
  13 Civ. 4715 (PKC), 2013 U.S. Dist. LEXIS 161960 (S.D.N.Y. Nov. 13, 2013) .......... 7

*Lauritzen v. Larsen*,
  345 U.S. 571 (U.S. 1953). .............................................................................................. 8

*M/S Bremen v. Zapata Off-Shrore Co.*,
  407 U.S. 1  (U.S. 1972) .............................................................................................. 3, 5

*MSF Hldg. Ltd. v. Fid. Trust Co.*,
  435 F. Supp. 2d 285 (S.D.N.Y. 2006) ........................................................................ 5, 6

*Pan Am. World Airways, Inc. v. C. A. B.*,
  517 F.2d 734 (2d Cir. 1975) ........................................................................................... 6

*Product Res. Group v. Martin Prof'l. A/S*,
  907 F. Supp.2d 401 (S.D.N.Y. 2012) .................................................................................. 4

*Republic of Ecuador v. Chevron Texaco Corp.*,
  376 F. Supp. 2d 334 (S.D.N.Y. 2005) ................................................................................. 3

*Senator Linie Gmbh & Co. Kg v. Sunway Line, Inc.*,
  291 F.3d 145 (2d Cir. 2002) ................................................................................................ 5

*Siegelman v. Cunard White Star Ltd.*,
  221 F.2d 208 (2d Cir. 1955) ................................................................................................ 4

*State Trading Corp v. Assuranceforeningen Skuld*,
  921 F.2d 409 (2d Cir. 1990) ................................................................................................ 3

*Thomson-CSF, S.A.* v. *Am. Arbitration Ass 'n,*
  64 F.3d 773 (2d Cir. 1995) ............................................................................................. 3, 5

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
  363 U.S. 574 (U.S. 1960) .................................................................................................... 5

**FOREIGN CASES**

*Nisshin Shipping Shipping Co. v. Cleaves & Co. Ltd.*
  1 Lloyd's Rep. 38 (Q.B.) ..................................................................................................... 5

*Vita Food Prods. V. Unus Shipping Co.*,
  [1939] A.C. 277 ................................................................................................................... 4

**MISCELLANEOUS**

Restatement (Second) Conflict of Laws §186 ........................................................................... 3

Restatement (Second) Conflict of Laws §187 ........................................................................... 8

Restatement (Second) Conflict of Laws §187(3) ...................................................................... 3

Restatement (Second) Conflict of Laws §187(a) ...................................................................... 8

Restatement (Second) Conflict of Laws §187(b) ...................................................................... 8

Restatement (Second) Conflict of Laws §188 ................................................................................... 8

Restatement (Second) Conflict of Laws §205 ................................................................................... 8

Restatement (Second) Conflict of Laws §218 ................................................................................... 8

## REPLY TO DEFENDANTS' STATEMENT OF FACTS[1]

**Page 4:** Anemi's base of operations was New York – not Greece. Dushas Reply Aff. ¶¶ 3-11. **Page 5, n.5:** The three-year 2005 management/brokerage agreement *Id.*, Exh. 1, which related, *inter alia*, to the THOI, served as a template for all later charters, including the KLC charters. For each new transaction, the parties altered the commission rates and/or basis upon which they were calculated as necessary. Hammond Reply Aff., ¶ 11. **Page 5:** There was no need to annually renew the three-year agreement which was in force in 2007 when the KLC charters were being negotiated. *Id*. at ¶¶ 11-13. The charters were "made and concluded in **Jersey City, New Jersey."** While dated February 1st, February 27th, April 17th and April 23, 2007, the negotiations were not concluded until May 4th and the charters were not signed until June 11, 2007. The Brokers did not "ha[ve] the ability to choose the provisions concerning arbitration and [governing] law." The signatory *parties* did. Brokers simply negotiate the terms as directed by their clients. Stavnes Aff. ¶¶ 10,12; Hammond Reply Aff.¶ 14. **Page 5, n.6:** A copy of the THOI charter party is attached as Exh. 2 to the Dushas Reply Affidavit. **Page 6:** The agreement to equalize all the commission rates was confirmed via the May 4, 2007 email, and later simply *reflected* in Addenda to the charter parties and in Clause 27. Stavnes Aff. ¶ 13; Dushas Reply Aff. ¶ 5, Holroyd Supp. Decl. ¶ 19(5)(ii) ("Addenda to the Master Charterparties between Anemi and KLC which *reflect the terms of the 4 May 2007 agreement*….") **Page 7, n.7:** **The** February 12, 2007 fixture recap is anything but "wholly irrelevant." That the May 4, 2007 email reflects the final brokerage agreement between Anemi and the Brokers for the KLC charters is fully explained in the 5/9/14 Marlowe Affirmation, ¶¶2-10 and Exhibits 2-8 thereto. **Page 8:** The contents of the May 4, 2007 agreement <u>was</u> included in the May 4, 2007 Addenda which, as Defendants concede, are included in Schedule 2.16(a) of the SPA. *See also* Hammond Reply Aff. ¶13. The thirteen KLC charters were modified, not "terminated" Compl. ¶¶40-43 and Exhibit 5: Stavnes Aff. ¶16. **Page 9:** Plaintiffs' commissions are

---

[1] Due to space limitations, Plaintiffs reply below only to those statements of Defendants which are erroneous. The pages noted refer to the pages in Defendants' Statement of Facts on which the erroneous statements appear.

expressly based not only on the profit sharing agreement, but also *"the hire payable under the Charter."* The actual language of clause 2(h) only paraphrased on Defendants' page 9 states:

> (h) It is understood that …brokerage commission is payable on the net earnings paid under this profit sharing agreement as follows: 1.25% Overseas Shipping Corporation, Seoul, and 1.25% to Peraco Chartering (USA) LLC plus 1.25% to International Chartering Services, Inc, ***in addition to the hire payable under the Charter.***

Stavnes Aff. ¶¶ 23-25; Compl. Exh. 4, p.2. **Pages 9-10:** The parties agree that Clause 14 of the Master Agreement "excluded third parties as beneficiaries pursuant to the English Contracts (Rights of Third Parties) Act." That is, third parties, including Plaintiffs, could not sue under the charter parties as of the implementation of the March 3, 2011 Master Agreement. Plfs' 5/24/12 Opp. Memo, Mot. to Compel, Dkt. No. 12, Point I; 5/23/2012 Bailey Decl. ¶19, Dkt. No. 10.

## ARGUMENT

Defendants incorrectly assert at page 10 that if English law applies, Brokers are unquestionably bound to arbitrate. However, if the Brokers' claims arise from an independent agreement, Plaintiffs <u>cannot</u> be compelled under English law. *See* 5/23/2012 Bailey Decl. ¶¶ 27(1), 30. Defendants also incorrectly state: "Federal common law is unclear as to whether the Brokers are bound." Federal law could not be clearer – no Second Circuit decision has *ever* upheld a signatory's attempt to enforce a choice-of law provision against a nonsignatory when choice-of-law is at issue.[2]

**POINT I.    A FEDERAL MARITIME CHOICE OF LAW ANALYSIS MANDATES THE APPLICATION OF FEDERAL LAW HEREIN.**

Defendants correctly note at page 11 that *Blue Whale Corp. v. Grand China Shipping Dev. Co., Ltd.*, 722 F.3d 488 (2d Cir. 2013) concluded that the contract's choice of law provision did not govern the alter-ego issue because it was "collateral" to the contract. *Id* at 496. Defendants then imply that had the issue involved the parties' alleged violations of the charter party, the court would have upheld the provision. However, whether the nonparty Brokers are bound to arbitrate does not

---

[2] *See* thorough analysis of Second Circuit decisions involving a choice-of-law dispute between signatories and nonsignatories at pages 6-11 of Plaintiffs' March 9, 2014 Remand Memo.

2

involve the parties' subsequent alleged violations.  It is a procedural issue.  The *Blue Whale* court specifically reasoned that "federal law controls the procedural inquiry" and that the issue before it was "inherently procedural by virtue of its relationship to the courts' subject matter jurisdiction." *Id*. at 494.   A signatory who seeks to compel a nonsignatory to arbitrate is challenging the court's subject matter jurisdiction, *Republic of Ecuador v. Chevron Texaco Corp.*, 376 F. Supp. 2d 334, 349-50 (S.D.N.Y. 2005).  Thus, the first issue before this Court is procedural and federal law controls.  *See Blue Whale,* 722 F.3d at 494.[3]

### A. The Contract's Choice of Law Provision is Immaterial Herein.

 Defendants next cite *Assuranceforeningen Skuld Den Danske Afdeling v. Allfirst Bank*, 96 Fed. App'x 753, 754-755 (2d Cir. 2004) quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1,18 (1972), *Great lakes Reinsurance (UK) PLC v. Durham Auctions Inc.*, 585 F.3d 236, 242 (5th Cir. 2009), and the Restatement (Second) Conflict of Laws §§ 186, 187(3) (1971) in urging the contract's choice-of-law.  However, none of these authorities address an attempt by a signatory to compel a nonsignatory to arbitrate.  In *Assuranceforeningen,* a signatory attempted to evade the contract's choice of law provision.[4]  *Great Lakes* and the cited Restatement sections also only address situations involving signatories.  The quotation from *State Trading Corp v. Assuranceforeningen Skuld,* 921 F.2d 409 (2d Cir. 1990) on Defendants' page 12 is equally unsupportive since the first noted exception therein to the application of a contract's choice-of-law is where "that jurisdiction has no substantial relationship to the parties or the transaction."  Here, as

---

[3] Defendants' quotation at page 11 of Thomas J. Schoenbaum, 1 *Admiralty and Maritime Law* § 5-24 at 363 (5th ed. 2100), while accurate, has limited application.   It is well established that, the first *Lauritzen* factor, the contract's choice-of-law provision, is not dispositive.  *Advani Enters. v. Underwriters at Lloyds*, 140 F.3d 157, 162 (2d Cir. 1998)  All others herein point to the application of federal law.  *See* Plaintiffs' 5/9/14 memo at Point I. A. pages 3-6.  Moreover, in quoting the statement in *Lauritzen* to the effect that, absent some public policy, the tendency is to apply the law which the *parties* intended, Defendants overlook (1) the public policy that, with limited exceptions, no one can be forced to arbitrate who has not so agreed, *Thomson-CSF, S.A. v. Am Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995) and (2) Plaintiffs are neither *parties* to the charters nor did they intend to be personally bound by any of their terms, including the arbitration and English law provision.  Hammond Reply Aff. ¶14, 5/21/12  Stavnes Aff., ¶ 29, 5/17/12 Dushas Aff. ¶¶ 28-29.
[4] *M/S Bremen* , cited by *Assuranceforeningen,* addresses only forum selection clauses – not choice of law clauses, which explains the odd placement of Defendants' quotation marks on page 12, n.8.  Moreover, that dispute, unlike this one, was between two signatories who had both opted for a neutral forum.

discussed at pages 3-6 of Plaintiffs' main brief, England's only relationship to this dispute is the charter parties' very narrow forum selection clause which is expressly limited to disputes between "Owners and the Charterers."

### 1. England has no relationship to these parties herein or to the dispute at issue.

Citing Defendants' English counsel, Charles Weller, Defendants' opening statement on page 13 concisely sums up the absurdity of their position.  "English law bears a substantial relationship to the parties or transaction because English law is one of the standard choices of law among parties to international shipping."   At the risk of stating the obvious, what law governs this dispute, or any aspect of it, does not turn on Mr. Weller's view (or a London arbitrator's article) regarding what dispute resolution forum and law they believe is most popular these days.  The Second Circuit specifically directed the application of federal maritime choice of law rules.  Even aside from the indisputable results of such an analysis - that federal law controls -there is consistent, binding Second Circuit precedent for the issues now before this Court.[5]   Nor is the English decision in *Vita Food Prods. V. Unus Shipping Co.,* [1939] A.C. 277, 290-91 or *Siegelman v. Cunard White Star Ltd.*, 221 F.2d 208 (2d Cir. 1955) applicable herein.  Aside from its being an English decision,as revealed in the long quotation on Defendants' page 13, the *Vita Food* court acknowledged there was "nothing to connect [the dispute] in any way with English law," but focused on what the *"parties* [signatories] may reasonably desire." Here, the dispute is not between the signatory parties.  This dispute involves an attempt to compel nonsignatories to arbitrate in a forum and under a law to which they never agreed and expressly opted to avoid.[6]

### 2. The application of English law conflicts with important U.S. public policy.

---

[5] *See* Plaintiffs' initial memorandum of law on remand at pages 6-11 which clearly establishes that *Sarhank Group v. Oracle Corp.* 404 F.3d 657 (2d Cir. 2005) and its progeny govern the facts of this case.

[6] *See* paras. 9-10 of Hammond Reply Aff. and Exhibit 3attached thereto.  Defendants constantly  attempt, throughout their various submissions, to characterize this dispute as one between the "parties."  Only disputes between Eagle and KLC would be between the "parties" to the charters as defendants later admit on pages 13 and 15 of their remand brief.  The "parties" to this litigation (all U.S. citizens) do not need a "neutral" forum.  This also renders *Product Res. Group v. Martin Prof'l. A/S, 907 F. Supp.2d 401, 416* cited on Defendants' page 14 inapposite.

Defendants wrongfully assert at page 14 that applying English law to compel Plaintiffs to arbitrate "does not conflict with the fundamental purposes of maritime law." On the contrary, the law and public policy of this Circuit forbids Defendants from compelling non-signatory Plaintiffs to arbitrate. (Ps' Remand Mem. 6-10); *see Thomson-CSF, S.A,* 64 F.3d at 776 ("'[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" (quoting *United Steelworkers of Am.,* 363 U.S. 574, 582 (1960)). Conformity with English commercial law decisions is favored only "in the absence of some rule of public policy which would forbid [it]." *See Senator Linie Gmbh & Co. Kg v. Sunway Line, Inc.*, 291 F.3d 145, 170 (2d Cir. 2002). Defendants fail to cite a single decision that compelled non-signatories to arbitrate in order to preserve such uniformity.

### 3. Compelling plaintiff nonsignatories to arbitrate in London under English law would be most definitely "unfair, unjust or unreasonable."

Having no applicable, much less precedential, case law to support the application of English law herein, on page 15 Defendants cite *M/S Bremen*'s "unfair, unjust, or unreasonable" guidelines. After conceding that the Supreme Court was referring to signatory parties and that "[t]he Brokers are not parties to the Charter Parties," Defendants nevertheless persist in asserting that applying the charter parties' choice-of-law provision would be neither "unfair, unjust, or unreasonable." While stressing Plaintiffs' involvement in the negotiations, Defendants ignore the Brokers' role in merely carrying out the signatories' instructions. Mr. Weller's emphasis on the parties' intentional insertion of London arbitration and English law into the NYPE charter party form fails for the same reason – it reflects the *parties'* choice for potential disputes between themselves, i.e., "between Owners and the Charterers" – not the Brokers' choice for potential disputes with their respective principals. Similarly, Defendants' reliance upon *MSF Hldg. Ltd. v. Fid. Trust Co.*, 435 F. Supp. 2d 285, 294 (S.D.N.Y.), a situation involving a letter of credit ("LOC"), is also misplaced. While *Nisshin Shipping* may have been decided before the Charter Parties were signed and would thus be applied to disputes between "Owners and the Charterers" as part of the English law in effect at that

5

time, *Nisshin* and English law would only be applied to the named parties to the charters.  In *MSF Hldg. Ltd.* the plaintiff was an assignee of the payee under the LOC.  Under federal law, the Brokers are not "parties" ("Owners or Charterers") to or assignees of the parties to the charter parties[7]  Nor can they be treated as such.  *See* this Court's March 6, 2013 Order, pp. 7, 9-10.

### B. A Maritime Choice of Law Analysis Points to the Application of U.S. Law.

As demonstrated in Plaintiff's main brief, a full review of the maritime choice of law factors requires a finding that U.S. law governs whether Plaintiffs are bound by the Charter Parties' arbitration clause. (Ps.' Remand Mem. 3-6).  Defendants make no attempt to establish that any of the factors point to the application of English law.  (Ds.' Remand Mem. 16-20).  Defendants merely try to minimize the overwhelming U.S. connections to this case.  In doing so, they misstate relevant facts, mischaracterize statements in Plaintiffs' affidavits, and intentionally confuse which contract is actually at issue.

#### 1. The place where the contract was negotiated, issued and signed.

As stated in Plaintiffs' Main Brief at 4-5, both the Charter Parties and the May 4, 2007 brokerage agreement were negotiated, issued, and signed in the United States.  Defendants try to minimize this by citing to a New Jersey decision which states: "[t]he place of negotiation, issuance and signing is relatively insignificant and does not point to one locus when negotiations, as here, were not conducted in a single place." (Ds.' Remand Mem. 17).  Aside from the fact that a decision from outside of the Second Circuit has no precedential value herein, s*ee Pan Am. World Airways, Inc. v. C. A. B.,* 517 F.2d 734, 741 (2d Cir. 1975), Defendants' argument is factually incorrect.  The negotiations between the parties for the May 4, 2007 brokerage agreement occurred in the parties' respective offices—which are all located within the United States. (Ps.' Remand Mem. 5).  The Charterparties were also issued and signed in the United States. (Compl. ¶¶ 12, 14, 16; Not. of

---

[7] It should be noted that nowhere in *MSF Hldg. Ltd.* does it say/suggest that third parties are "charged with the knowledge" of existing law as Defendants suggest at page 16, but rather only that "the Court is required to apply [the] law as it existed at the time the subject contract was made."  *Id.* at 294.

Removal, Exh. A.) Non-party KLC visited Anemi's office in New York to sign the Charter Parties. (Dushas Reply Aff. ¶ 9). As such, Defendants are incorrect in stating that Anemi conducted negotiations in Greece. Mr. Dushas, who contracted on behalf of Anemi, worked from Anemi's New York office. Dushas Reply Aff. ¶7. The only statement Defendants provide to refute all of this is that of their English counsel who readily admits that his firm was not "engaged in negotiation of the Charter Parties…." (Weller Remand Decl. ¶4).

    2.   **The place of performance and subject matter of the contract.**

Defendants contend at18 that because the thirteen vessels were expected to operate worldwide "performance of the Charter Parties would be worldwide." They ignore, however, that the actual dispute between the parties herein involves the payment of brokerage commissions – not the performance of the charterparties. Thus, the place of performance was the United States where the commissions were paid to and received by Plaintiffs. *See Kulig v. Midland Funding, LLC*, 13 Civ. 4715 (PKC), 2013 U.S. Dist. LEXIS 161960, at\* (S.D.N.Y. Nov. 13, 2013) ("As for the place of performance…[Plaintiff] made payments on her outstanding balance in the state of New York"). As such, this factor also points to the application of federal law.

    3.   **Domicile, residence, nationality, place of incorporation, and place of business.**

Plaintiffs' initial remand brief lays out the domicile, residence, nationality, place of incorporation and place of business of all concerned, establishing not only the extensive ties that the U.S. has to the parties, but also demonstrating that lack of any English ties. The only entity without a U.S. connection is non-party KLC, which is incorporated and located in Korea. (Not. of Removal ¶ 14 (Dkt. No. 1)). To be sure, Defendants attempt to minimize Anemi's New York activities, stating that "[a]t most, some of Anemi's business was conducted in the United States by Mr. Dushas." (Ds.' Remand Mem. 18). However, quite the opposite is true. (Dushas Reply Aff. ¶ 6-7). Finally, Defendants at 18-19 argue that "because KLC remained a party to the Charter Parties…the considerations of a neutral forum would militate even more strongly against the choice

of United States law after the sale of Anemi to Eagle Bulk (a U.S. Corporation)." This is illogical given that KLC is not a party to this dispute. The argument that U.S. law should not apply *because of the extensive U.S. ties to this dispute* runs afoul of the very purpose underlying a maritime choice of law contacts analysis. *See Lauritzen v. Larsen*, 345 U.S. 571, 582 (1953).

### C. A Third Party Beneficiary[8] is Not Automatically Bound by the Contract's Choice of Law.

Selectively quoting on page 19 only that portion of *American Steamship* which discusses a third party's direct benefit in choice of law issues, Defendants omit to note that the District Court upheld the contract's choice of law there because, unlike herein, the analysis there revealed that the contract's choice-of-law had "more substantial connections" with the dispute. 2013 U.S. Dist. Lexis 43547 at *6. Similarly, Defendants' quotation of *Aguas,* 585 F.3d at 701, *American Bureau of Shipping*, 170 F.3d 349, 353 (2d Cir. 1999) and *Blue Whale,* 772 F.3d at 492, n.2 overlooks the Second Circuit's acknowledgment in each case of considerations beyond a nonsignatory's status which would impact whether a forum selection clause would be enforced. As clearly stated in *Aguas,* nonsignatory status "is insufficient, *standing alone*, to preclude enforcement…." 585 F.3d at 701 (emphasis added) Finally, even a cursory review of the sections of the Restatement (Second) of Conflict of Laws cited on Defendants' pages 19-20 demonstrates that the charter parties' forum selection clause should not be enforced herein. (§187(a) and (b) noting non enforcement if "no substantial relationship" or if contrary to a fundamental policy of a state with a greater interest; §188 also noting the most significant relationship test; §205 and §218 again referring back to §§187 and 188)

### POINT II.   PLAINTIFFS' CLAIMS ARISE INDEPENDENTLY OF THE CHARTERS.

In denying that Plaintiffs' claims arise from a prior, independent agreement, Defendants' Point II. carefully avoids the unchallenged evidence of the separately enforceable May 4, 2007 brokerage

---

[8] Whether Plaintiffs are third party beneficiaries is disputed given that their claims arise out of a prior independent agreement and are only calculated on the chart party daily hire rate.

8

contract between Anemi and the Brokers.[9] Instead, Defendants discuss the scope of the charter parties' arbitration provision and other issues unrelated to Plaintiffs' prior agreement.

### A. The Scope of Clause 17 is Narrow Under Both United States and English Law.

Since filing their main brief, Defendants have retracted their claim at Point II A. that the independence issue would be unqualifiably arbitrable under English law. Now this is allegedly true only if U.S. arbitration law applies to whether the Brokers are bound to arbitrate under a direct benefit estoppel theory and English law is then applied to the scope of Clause 17. Defendants' "direct benefit estoppel" appears at Point I.C. of their main brief and is addressed *supra* herein under U.S. federal law at Point I.C. The Court is also respectfully referred to paragraphs 6-9 and Exhibits A-B thereto of the June 12, 2014 Fourth Declaration of David J. Bailey, Q.C. enclosed herewith wherein Mr. Bailey corrects and supports Defendants' continued "misunderstanding" of the narrow scope of the arbitration clause even under English law,[10] as well as the impact of Plaintiffs' prior, separate agreement on the arbitrability of same under English law.[11] In sum, Mr. Bailey concludes that regardless of whether federal or English law is applied to the independence issue, Plaintiffs would not be bound to arbitrate it before London arbitrators, noting another serious flaw in Defendants' recently changed position – both hypothetical scenarios suggested in Defendants' May 30th letter ultimately point to English law. Yet, according to Defendants, each inexplicably leads to a different result. (*Id*. at ¶¶14-15)

### B. The Court Must Determine the Arbitrability of Plaintiffs Claims.

Defendants had argued at Point II.B. that the "arbitrability of Plaintiffs claims is for the arbitrators because Clause 17 "is more than sufficiently broad to refer questions of arbitrability to the arbitrators." (Ds.' Remand Mem. 22). Aside from the fact that it would be considered narrow

---

[9] *See* Dushas (¶ 21-29), Hammond (¶13-23), Stavnes (¶8 ) Affidavits (Dkt. Nos. 7, 8, 18) and Dushas (¶4), Hammond (¶9-14 and n. 3-5) Reply Affidavits.
[10] *See* May 30, 2014 letter from B. Paulsen, Esq. to the Court. (Dkt No. 63), (Marlowe Reply Aff., Exh. 2)
[11] This second aspect of Mr. Bailey's Fourth Declaration is discussed at paras. 10-13.

under both federal and English law,[12] Defendants' argument must fail because there has been no determination of a valid arbitration agreement between the parties, a finding this Court would first have to make before considering whether *any issue* falls under the scope of the clause. (Second Cir. Summary Order (Dkt. No. 47) at 9); Ps' Remand Mem. 17).

### C.  *Robinson Brog* Is Distinguishable, And, Thus, Not Dispositive of the Independence Issue.

Defendants' argue at Point II.C. that Plaintiffs' claims arise under the Charter Parties because the source of the brokers' commissions is hire "earned and paid" under them.[13]  Defendants rely on *Robinson Brog* where the Second Circuit rejected the nonsignatory's claim that its rights arose from a separate agreement which did not contain an arbitration clause.  While the *Robinson Brog* Court did consider the interrelationship of the three agreements in that case which, functioning together, provided the basis for the plaintiff's potential recovery (2013 U.S. App. LEXIS 8280 at 5), this was only the second of two considerations.  The first and primary consideration of the Court was the extremely broad arbitration provision in that case which applied to:

> *[a]ny and all disputes*, controversies, claims or demands arising out of or relating to (1) this Agreement or (2) any provision hereof or (3) the providing of services by Attorneys to Client or (4) the relationship between Attorneys and Client.

*Id.* at *6-7 (emphasis added).  As stated by the Second Circuit, "[a]pplying the traditional presumption of arbitrability to such broadly worded clauses and considering the interrelation of the three agreements in this case, we conclude that the arbitration clause covers this dispute."  Moreover, in the instant case, the contracting parties for the May 4, 2007 agreement and subsequent charters were different.  In *Robinson Brog,* the same parties were involved in all three agreements.[14]  Thus, the mere fact that the Brokers' commissions herein are calculated upon the amount of hire

---

[12] *See supra* at Point II.A.; *see also* Dkt. No. 12 pp. 14, 18-19, Dkt No. 40 pp. 6-7, 2d. Cir. Dkt No. 56 pp. 16-17, 24, 27 53, 59-61; Dkt No. 33 pp. 6-8.
[13] Though insignificant, Defendants' statement that the basis for Plaintiffs' independent agreement was only made clear at oral argument before the Second Circuit is untrue.  The May 4, 2007 brokerage agreement is Exhibit 1 to the Complaint and its significance was discussed there and in every brief and affidavit filed thereafter.
[14] *See* Plaintiffs' Appellate Opposition Brief at Point III.A. regarding the need for two agreements to be between the same parties and about the same subject matter in order for the latter to supersede the former.

earned and paid under the charters is not dispositive of whether Plaintiffs' prior, separately enforceable agreement with Anemi is independent of the Charter Parties.

### D. Plaintiffs' Claims are Manifestly Meritorious.

Contrary to Defendants' claims at page 25, Plaintiffs (and Defendants' own English expert)[15] have explained that Clause 27 of the Charter Parties simply *reflects* the previously agreed upon commission rates for the Brokers confirmed in the May 4, 2007 email agreement. The 46 NYPE is a standard form charter party wherein the blanks are routinely filled in with information compiled about the ships, the parties, the nonparties, and various terms and conditions. That (1) the commission rate aspects of the May 4, 2007 email could not have been between "Anemi and KLC" as Defendants assert since KLC was neither paying nor receiving brokerage commissions; (2) that it was not a "fixture recap" as Defendants have also previously argued, is abundantly demonstrated at pages 41-44 of Plaintiffs' appellate opposition memo of law enclosed herewith. (*See* June 12, 2014 Keane Aff., Exh. 1) Given the indisputable merit of Plaintiffs' claims, and the federal law governing herein, they should neither be arbitrated nor stayed as urged by Defendants.

Defendants wrongly assert that the "the question before the Court is whether Plaintiffs' claims need to be brought in or stayed pending, London arbitration." (Ds. Remand Mem. 20). Their reliance on *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir. 1987), however, is misplaced. *Genesco,* in fact, found that a "court asked to stay proceedings pending arbitration first…must determine whether the parties agreed to arbitrate." *See id.* at 844 outlining the four step process. Defendants' proposed stay issue, therefore, is premature, as this Court must first determine the threshold issue as to whether the parties agreed to arbitrate. Further, the suggestion by Defendants that the Second Circuit's directive "presumes that the Brokers are bound to arbitrate" (Dfs' Remand Mem. 21) is a gross mischaracterization of that decision. Indeed, the Second Circuit held the exact opposite, stating that the district court should determine which law governs this issue and whether

---

[15] *See* Holroyd Supp. Decl. ¶19(5)(ii) (Dkt. No. 23).

plaintiffs have claims that are independent of the charter parties, and if so, *permit plaintiffs to litigate these claims*. (Decision, at *6) (emphasis added). Finally, Plaintiffs have clearly demonstrated not only their entitlement to prosecute their claims in New York under federal law, but that their claims are not of "questionable merit." Thus, whether viewed from a procedural or substantive perspective, Plaintiffs' claims should not be stayed. *See Genesco* 815 F.2d at 856 noting the appropriateness of stay orders where some of the claims are found to be arbitrable and some (of questionable merit) are not. Here, there is one claim for unpaid commissions asserted by both Plaintiffs and no ruling has as yet been made regarding its arbitrability.

## CONCLUSION

For all the foregoing reasons, and those contained in the accompanying June 12, 2014 Reply Declaration of David J. Bailey, Q.C., the June 12, 2014 Reply Affirmation of Mary Ann C. Marlowe, Esq., the June 3, 2014 Reply Affidavit of James Hammond, and the June 4, 2014 Reply Affidavit of Sotiri Dushas, this Court should find that (1) U.S. federal law applies to whether Plaintiffs are bound to arbitrate under the charter parties' arbitration clause; (2) Plaintiffs' claims arise under a prior, independent agreement; (3) U.S. federal law applies to the determination of the "independence" issue; and (4) the independence of Plaintiffs' prior agreement is a determination for the Court – not London arbitrators.

Dated: June 12, 2014

        Respectfully submitted,
        KEANE & MARLOWE, LLP

        By: /s/ Mary Ann C. Marlowe
           Christopher P. Keane (CK 4394)
           Mary Ann C. Marlowe (MM 0723)
           *Attorneys for Plaintiffs*